E-FILED
Friday, 20 November, 2026 01:31:53 PM
Clerk, U.S. District Court, ILCD

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**URBANA DIVISION**

| | | |
|---|---|---|
| **AURELIO MONTANO,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 26-2197** |
| | ) | |
| **WEXFORD HEALTH SOURCES INC.** ***et al.*****,** | ) | |
| **Defendants.** | ) | |

**ORDER**

**COLLEEN R. LAWLESS, United States District Judge:**

Before the Court for screening is a Complaint (Doc. 1) filed under 42 U.S.C. § 1983 by Plaintiff Aurelio Montano, an inmate at Danville Correctional Center ("DCC"). Plaintiff has also filed Motions for Status (Docs. 10-11).

## I. Screening Standard

The Court must "screen" Plaintiff's Complaint and dismiss any legally insufficient claim or the entire action if warranted. 28 U.S.C. § 1915A. A claim is legally insufficient if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." *Id*. In reviewing the Complaint, the court accepts the factual allegations as accurate, liberally construing them in the plaintiff's favor. *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013). However, conclusory statements and labels are insufficient. Enough facts must be provided to "state a claim for relief that is plausible on its face." *Alexander v. United States*, 721 F.3d 418, 422 (7th Cir. 2013) (citation omitted).

## II. Complaint

### A. Factual Allegations

Plaintiff alleges constitutional violations at DCC against former Assistant Warden of Operations Matthew Birge; Dr. Jonathan Ek; Nurses S. Glenna and C. Cauadine; John and Jane Does; Dennis Meyer; Dentist Willian Reical; Chief of Maintenance J. Story; Assistant Warden of Programs McKenna Winzel; American Pest Control ("American"), Incorporated; Centurion Health ("Centurion"); and Wexford Health Sources, Incorporated ("Wexford").

Plaintiff's pleading spans thirty-six pages and provides a comprehensive account of his efforts to receive medical care for a rodent bite to his leg that occurred on December 26, 2024. Plaintiff asserts that from December 26, 2024, to July 1, 2026, when he filed his pleading, he did not receive adequate medical treatment for his known and unknown symptoms caused by the mouse bite. Plaintiff also claims deficient dental care.

At midnight on December 26, 2024, Plaintiff was asleep in his cell when he was awakened by leg pain. The bleeding Plaintiff subsequently saw was caused by a mouse bite. Plaintiff placed the dead mouse in a plastic bottle for testing and was taken to the healthcare unit ("HCU"), where Defendant Glenna washed the bite wound, applied ointment, wrapped Plaintiff's wound, and advised Plaintiff to seek medical care if he had any further issues.

At about 1 p.m. on December 26, 2024, Defendant Birge directed Plaintiff to throw away the dead mouse, stating he knew about the problem. Later that afternoon, Plaintiff was sent to the HCU upon his request, where Defendant Cauadine refused to accept the

dead mouse. Plaintiff acknowledges Cauadine provided him with about eighteen Tylenol pills but did nothing else. Plaintiff asserts that Cauadine "made false entries in [his] medical records," which he claims is a "systemic practice" by both Wexford and Centurion. (Doc. 1 at 8.)

On December 27, 2024, Defendant Glenna did not provide Plaintiff with a requested tetanus injection, and Defendants Birge and Winzel knew of the rodent infestation based on numerous filed grievances and another inmate being bitten. (*Id*. at 7-9.) Plaintiff claims that on November 1, 2025, his cell was searched while he was at the HCU in retaliation for complaining about unsanitary conditions and filing grievances.

On January 15, 2025, Plaintiff was seen by Defendant Ek on what Plaintiff acknowledges was an unrelated medical issue. When Plaintiff tried to discuss his mouse bite, Ek refused to do so. The following day, a nurse referred Plaintiff to see a doctor for leg pain, diarrhea, and vomiting. Plaintiff states that on January 21, 2025, he sought medical assistance from Ek for the symptoms he experienced on January 16, 2025, which he claims resulted from the mouse bite, but Ek refused to provide any treatment.

Plaintiff claims that Defendants Wexford, the former contracted healthcare provider for the Illinois Department of Corrections ("IDOC"), and Centurion, the current IDOC contracted healthcare provider, have similar policies that restrict access to a physician until an inmate has seen a nurse on three previous occasions, which causes delays in treatment. Plaintiff also calls into question Wexford and Centurion's decision to hire Defendant Ek, which Plaintiff claims establishes a sufficient nexus between Ek's qualifications and his unnecessary suffering.

Plaintiff claims Defendant Story was responsible for contracting with American to provide pest control, which Plaintiff claims resulted in inadequate service as evidenced by his mouse bite. Plaintiff asserts that after American was replaced by another contractor, no rodents have appeared in his housing wing. Plaintiff claims that Story turned a blind eye by continuing to use American, which Plaintiff characterizes as an ineffective extermination company.

The remainder of Plaintiff's pleading outlines the allegedly inadequate dental treatment he received at DCC.

**B. Analysis**

Under Federal Rule of Civil Procedure 8(a), a complaint need only contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "This requirement is satisfied if the complaint (1) describes the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests and (2) plausibly suggests that the plaintiff has a right to relief above a speculative level." *Bravo v. Midland Credit Mgmt.*, 812 F.3d 599, 601–02 (7th Cir. 2016); *see also Charleston v. Bd. of Trs. of the Univ. of Ill. at Chi.*, 741 F.3d 769, 772 (7th Cir. 2013) ("Instead, a plausible claim must include 'factual content' sufficient to allow the court 'to draw the reasonable inference that the defendant is liable for the misconduct alleged.'") (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Plaintiff does not state plausible claims against Defendant Winzel because he does not provide facts that demonstrate or permit the inference that Winzel deprived Plaintiff of a constitutional right.

"Claims of deliberate indifference to medical needs are examined differently depending on whether the defendants in question are medical professionals or [laypersons]." *McGee v. Adams*, 721 F.3d 474, 481 (7th Cir. 2013). Treatment decisions made by medical professionals are presumptively valid. *Collignon v. Milwaukee County*, 163 F.3d 982, 989 (7th Cir. 1998). "A medical professional's treatment decisions will be accorded deference unless no minimally competent professional would have so responded under those circumstances." *Jackson v. Kotter*, 541 F.3d 688, 698 (7th Cir. 2008). "When a medical professional acts in his professional capacity, he may be held to have displayed deliberate indifference only if the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *McGee*, 721 F.3d at 481 (quoting *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011)). "Deliberate indifference is not medical malpractice; the Eighth Amendment does not codify common law torts." *Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008).

Plaintiff's account is sufficient to state an Eighth Amendment deliberate indifference claim against Defendant Ek for his alleged denial of medical care for Plaintiff's reported symptoms caused by a rodent bite. However, Plaintiff does not state a claim against Defendants Cauadine or Glenna.

Plaintiff states that on the afternoon of December 6, 2024, he requested and was sent to the HCU, where Defendant Cauadine provided him with about eighteen Tylenol pills, but claims she did nothing else. Plaintiff neither states why he sought medical treatment nor what he reported to Cauadine, to permit the Court to infer that Cauadine's

decision to provide Plaintiff Tylenol demonstrated a lapse of medical judgment sufficient to state a plausible claim.

Furthermore, Plaintiff's assertion that Defendant Cauadine falsified his medical record by documenting her observations of the absence of swelling or bite marks and no reports of pain does not establish deliberate indifference without a plausible allegation that Cauadine knew of and disregarded a substantial risk to Plaintiff's health. *See Gutierrez v. Peters*, 111 F.3d 1364, 1368 n.1 (7th Cir. 1997) (affirming the dismissal of an Eighth Amendment claim involving, among other things, a nurse's allegedly erroneous chart entry indicating that the inmate had failed to appear for a scheduled appointment, noting that a charting mistake did not state a constitutional claim).

Similarly, Plaintiff does not state a claim against Defendant Glenna. Plaintiff acknowledges that on December 26, 2024, Glenna washed his bite wound, applied ointment, wrapped Plaintiff's wound, and advised Plaintiff to seek medical care if he had any further issues. Plaintiff asserts that on December 27, 2024, Glenna did not provide him with a tetanus injection because, in her medical opinion, it was "not required at this time." (Doc. 1 at 9.) However, Glenna's determination, without more, is insufficient to state a deliberate indifference claim. *See Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010) ("Neither medical malpractice nor mere disagreement with a doctor's medical judgment is enough to prove deliberate indifference . . . ."); *see also Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003) (stating that a plaintiff's "disagreement with medical professionals about his needs . . . does not state a cognizable Eighth Amendment claim").

By prohibiting "cruel and unusual punishments," the Eighth Amendment imposes

upon prison officials the duty to provide humane conditions of confinement. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). To succeed on a claim of inhumane conditions of confinement, a plaintiff must satisfy a test that contains both an objective and subjective component. *Lunsford v. Bennett*, 17 F.3d 1574, 1579 (7th Cir. 1994). The objective component focuses "on the nature of the defendants' acts" and whether a plaintiff was forced to endure conditions that "exceeded contemporary bounds of decency of a mature, civilized society." *Id.* "This is necessarily a difficult and imprecise contextual inquiry." *Id.* The subjective component focuses on whether the prison officials acted with a "sufficiently culpable state of mind." *Id.* For cases involving inhumane conditions of confinement, a "deliberate indifference" standard is used. *Id.* "An official is deliberately indifferent when he is subjectively aware of the condition or danger complained of, but consciously disregards it." *Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650, 665 (7th Cir. 2012).

The Court concludes that Plaintiff's account states an Eighth Amendment conditions of confinement claim against Defendants Birge, Story, and Winzel based on their purported knowledge of the rodent infestation, which affected at least one other inmate. *See Antonelli v. Sheahan*, 81 F.3d 1422, 1431 (7th Cir. 1996) (concluding that a prolonged pest infestation may be considered a deprivation sufficient to establish an Eighth Amendment violation).

Defendants Centurion and Wexford can be held liable under § 1983 if an unconstitutional act is caused by: "(1) an official policy adopted and promulgated by its officers; (2) a governmental practice or custom that, although not officially authorized, is

widespread and well settled; or (3) an official with final policy-making authority." *Thomas v. Cook Cty. Sheriff's Dept.*, 604 F.3d 293, 303 (7th Cir. 2010); *see also Woodward v. Corr. Med. Servs. of Ill., Inc.*, 368 F.3d 917, 927-28 (7th Cir. 2004) (stating that the standard for municipal liability in *Monell v. N.Y. City Dep't of Soc. Servs.*, 436 U.S. 658 (1978), applies to corporations as well). "The 'official policy' requirement was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986) (emphasis in original).

Plaintiff's allegation that Defendants Centurion and Wexford instituted a policy that requires every inmate to attend sick call three times before being referred to a physician for treatment is sufficient to state a *Monell* claim. However, Plaintiff does not state a claim against Centurion and Wexford based on their respective hiring practices. "To prevent municipal liability for a hiring decision from collapsing into respondeat superior liability, a court must carefully test the link between the policymaker's inadequate decision and the particular injury alleged." *Board of Cnty. Com'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 410 (1997). A generalized assertion that the employee was unfit, as Plaintiff alleges, was dangerous or had a criminal history is insufficient. *Id.* at 407–12; *see also Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 236-239 (7th Cir. 2021) (discussing *Bryan County* and explaining the distinction between an isolated hiring decision and a broader institutional policy, noting that an isolated hiring decision, without evidence of a broader institutional policy or practice, ordinarily does not establish an implied policy).

"[T]he *Monell* theory of municipal liability applies in § 1983 claims brought against private companies that act under color of state law." *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 664 (7th Cir. 2016); *see also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978); *Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650, 675 (7th Cir. 2012) ("Private corporations acting under color of state law may, like municipalities, be held liable for injuries resulting from their policies and practices."); *Iskander v. Forest Park*, 690 F.2d 126, 128 (7th Cir. 1982) (applying § 1983 to private corporations).

In *Rodriguez v. Plymouth Ambulance Service*, 577 F.3d 816, 822–23 (7th Cir. 2009), the Seventh Circuit discussed circumstances under which a private entity may act under color of state law, including when the government directs or controls the private entity's actions or the government delegates a public function to the private entity. *See Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982) (in which the United States Supreme Court held that "a State normally can be held responsible for a private decision only when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State."). Unlike Centurion, which is contracted to perform the State's affirmative constitutional obligation to provide medical care to prisoners, a private extermination company such as American is not controlled by the State. Instead, American performs a commercial service routinely provided outside the correctional context. Thus, without more, which Plaintiff does not provide, Plaintiff fails to state a plausible *Monell* claim against American for allegedly providing inadequate extermination services at DCC.

To make out a prima facie case of First Amendment retaliation, a plaintiff must

establish that (1) he engaged in activity protected by the First Amendment, (2) he suffered a deprivation that would likely deter First Amendment activity in the future, and (3) the First Amendment activity was "at least a motivating factor" in the defendants' decision to take the retaliatory action. *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009).

Plaintiff claims that on November 1, 2025, his cell was searched while he was at the HCU in retaliation for complaining about unsanitary conditions and filing grievances. However, Plaintiff neither identifies the corrections officers who searched his cell nor provides any facts showing they knew about Plaintiff's first amendment activity. See *Consolino v. Towne*, 872 F.3d 825, 830 (7th Cir. 2017) ("In order to demonstrate that a defendant was motivated to retaliate based on protected speech, the plaintiff must first produce evidence that the defendant knew about the protected speech.").

The Court notes that Plaintiff explains that he named John and Jane Doe Defendants because he is unsure of the correct spelling of some Defendants, which he will verify and, if required, file an Amended Complaint. However, the Court does not permit placeholders for possible parties. *See Charleston v. Bd. of Trs. of the Univ. of Ill. at Chi.*, 741 F.3d 769, 772 (7th Cir. 2013) ("[A] plausible claim must include 'factual content' sufficient to allow the court 'to draw the reasonable inference that the defendant is liable for the misconduct alleged.'") (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Any misspelling of names can be rectified by the Court *sua sponte*, and if, during the discovery process, Plaintiff discovers additional Defendants, he may file a Motion for Leave to file an Amended Complaint that complies with the Court's instruction in its Scheduling Order, which will be entered after Defendants file a responsive pleading.

Plaintiff's dental care claims against Defendants Meyer and Reical should be raised in separate lawsuits, as they concern different violations against different individuals and are unrelated to his medical and conditions of confinement claims. In other words, "multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2." *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) ("Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that this 50-claim, 24-defendant suit produced but also to ensure that prisoners pay the required filing fees—for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees."); *see also Wheeler v. Wexford Health Sources, Inc.*, 689 F.3d 680, 683 (7th Cir. 2012) ("A litigant cannot throw all of his grievances, against dozens of different parties, into one stewpot.").

Plaintiff's Motions for Status (Docs. 10-11) are moot with the entry of the Court's Order.

**IT IS THEREFORE ORDERED:**

1) **Plaintiff's Motions for Status (Docs. 10-11) are MOOT.**

2) **According to the Court's Merit Review screening of Plaintiff's Amended Complaint under 28 U.S.C. § 1915A, Plaintiff has alleged enough facts to proceed with the following Eighth Amendment claims: deliberate indifference to serious medical needs against Defendant Ek and inhumane conditions of confinement against Defendants Birge, Story, and Winzel. Plaintiff's claims proceed against Defendants in an individual capacity only. Additional claims shall not be included in the case, except at the Court's discretion on motion by a party for good cause shown or under Federal Rule of Civil Procedure 15.**

3) **The Clerk of the Court is DIRECTED to terminate C. Cauadine, John and Jane Does, S. Glenna, Dennis Meyer, Willian Reical, American Pest Control,**

**Centurion Health, and Wexford Health Sources, Incorporated as parties.**

**4) This case is now in the process of service. The Court advises Plaintiff to wait until counsel has entered an appearance before filing any motions to give Defendants notice and an opportunity to respond to those motions. The Court will deny motions filed before counsel has entered an appearance as premature. Plaintiff need not submit evidence to the Court unless otherwise directed by the Court.**

**5) The Court will attempt service on Defendants by mailing a waiver of service. Defendants have sixty days from service to file an Answer. If a Defendant has not filed an Answer or appeared through counsel within ninety days of the entry of this Order, Plaintiff may file a motion requesting the status of service. After service of process, the Court will enter an order setting discovery and dispositive motion deadlines.**

**6) If a Defendant no longer works at the address provided by Plaintiff, the entity for whom that Defendant worked while at that address shall submit to the Clerk said Defendant's current work address or, if not known, said Defendant's forwarding address. This information shall be used only for effectuating service. Documentation of forwarding addresses shall be retained only by the Clerk and shall not be maintained in the public docket nor disclosed by the Clerk.**

**7) Defendants shall file an Answer within sixty days of the date the Clerk sends the waiver. A motion to dismiss is not an answer. The Answer should include all defenses appropriate under the Federal Rules. The Answer and subsequent pleadings shall be to the issues and claims stated in this Order. In general, an answer sets forth Defendants' positions. The Court does not rule on the merits of those positions unless and until Defendants file a motion. Therefore, no response to the Answer is necessary or will be considered.**

**8) This District uses electronic filing, which means that after Defendants' counsel has filed an appearance, Defendants' counsel will automatically receive electronic notice of any motion or other paper filed by Plaintiff with the Clerk. Therefore, Plaintiff does not need to mail copies of motions and other documents that Plaintiff has filed with the Clerk to Defendants' counsel. However, this does not apply to discovery requests and responses. Discovery requests and responses are not filed with the Clerk. Instead, Plaintiff must mail his discovery requests and responses directly to Defendants' counsel. Discovery requests or responses sent to the Clerk will be returned unfiled unless they are attached to and the subject of a motion to compel. Discovery does not begin until Defendants' counsel files an appearance and the Court enters a scheduling order, which will explain the discovery process in more detail.**

**9) Defendants' counsel is granted leave to depose Plaintiff at his place of**

**confinement. Defendants' counsel shall arrange the time for the deposition.**

10) **Plaintiff shall immediately notify the Court, in writing, of any change in his mailing address and telephone number. Plaintiff's failure to inform the Court of a change in mailing address or phone number will result in the dismissal of this lawsuit with prejudice.**

11) **If a Defendant ails to sign and return a waiver of service to the Clerk within thirty days after the waiver is sent, the Court will take appropriate steps to effect formal service through the U.S. Marshals Service on that Defendant and will require that Defendant pay the total costs of formal service under Federal Rule of Civil Procedure 4(d)(2).**

12) **The Court directs the Clerk to enter the standard qualified protective order under the Health Insurance Portability and Accountability Act.**

13) **The Court directs the Clerk to attempt service on Defendants under the standard procedures.**

ENTERED November 20, 2026.

s/ *Colleen R. Lawless*

COLLEEN R. LAWLESS
UNITED STATES DISTRICT JUDGE